UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION** at **LEXINGTON**

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE USA, INC. as subrogee of ASAHI BLUEGRASS FORGE CORPORATION, | ) ) ) ) |
| Plaintiff, | ) Civil Case No. ) 5:18-cv-152-JMH ) |
| V. | ) ) |
| DENHAM-BLYTHE COMPANY, INC., *et al.*, | ) **AMENDED MEMORANDUM** ) **OPINION AND ORDER** ) |
| Defendants. | ) |

\*\* \*\* \*\* \*\* \*\*

This matter comes before the Court on Defendant Denham-Blythe Company, Inc's ("Denham-Blythe") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 20] and Defendant BlueScope Buildings North America, Inc.'s ("BlueScope") Motion for Judgment on the Pleadings [DE 28]. Having considered the matter fully, and being otherwise sufficiently advised, the undersigned will grant Defendant Denham-Blythe's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 20] and deny Defendant BlueScope's Motion for Judgment on the Pleadings [DE 28].

**FACTUAL AND PROCEDURAL BACKGROUND**

This case arises from a January 31, 2011 design-build contract ("the Contract") between Asahi Bluegrass Forge Corporation ("Asahi") and Denham-Blythe for the construction of a 68,000 square foot manufacturing facility ("the Building"). [DE 20-1, at 2]. "As

part of its obligations as general contractor, Denham-Blythe contracted with several Contractors to complete the design and construction process[,]" including BlueScope, Varco Pruden Buildings ("Varco") (a division of BlueScope), and Arrow Metals and Coatings, Inc. ("Arrow"). [DE 29, at 2].

"Denham-Blythe and Asahi utilized AIA Document A141 – 2004 Standard Form of Agreement Between Owner and Design-Builder, with modifications specific to this job, for the Contract." [DE 20-1, at 2 (citing [DE 20-2])]. The Contract defines a "Contractor" as follows:

> § A.1.1.4 CONTRACTOR
> A Contractor is a person or entity, other than the Architect, that has a direct contract with the Design-Builder to perform all or a portion of the construction required in connection with the Work. The term "Contractor" is referred to throughout the Design-Build Documents as if singular in number and means a Contractor or an authorized representative of the Contractor . . . .

[DE 29, at 2-3 (citing [DE 23-1, at 14])]. On March 2, 2012, the roof of the Building was damaged by severe winds and was subsequently repaired by Denham-Blythe. [DE 20-1, at 2]. Again, on March 1, 2017, the roof of the Building sustained damage from severe winds, and Denham-Blythe completed both the temporary repair work and permanent repair work. *Id.*

After the roof was damaged on March 1, 2017, Asahi submitted property damages claims to its insurer, Plaintiff Mitsui Sumitomo Insurance USA, Inc. ("Mitsui"). *Id.* "According to the Complaint,

2

Mitsui Sumitomo made payments to Asahi in response to the claims in the amount of $1,315,092.00 under policy PKG3126694 (hereinafter referred to as 'the Policy') with effective dates of October 1, 2016 through October 1, 2017." *Id.* (citing [DE 20-3]). On February 22, 2018, Mitsui, as subrogee of Asahi, filed its Complaint [DE 1] against Denham-Blythe, BlueScope, Varco, and Arrow asserting subrogation rights against Defendants for the amounts paid to repair the property damage caused by the 2017 severe winds. [DE 1]. Mitsui's claims against Denham-Blythe include negligence, breach of contract, breach of warranty of workmanlike services, and negligent misrepresentation. *Id.* Mitsui's allegations against BlueScope and Varco include negligence, negligent misrepresentation, breach of warranty of workmanlike service, and breach of contract and third-party beneficiary. *Id.* On April 13, 2018, Denham-Blythe filed the present Motion to Dismiss [DE 20], and on February 15, 2019, BlueScope filed the present Motion for Judgment on the Pleadings [DE 28] requesting Mitsui's claims against BlueScope and Varco be dismissed. BlueScope's Motion for Judgement on the Pleadings [DE 28] is nearly identical to Denham-Blythe's Motion to Dismiss [DE 20]. The only substantial difference between the two Motions [DE 20; DE 28] is that BlueScope's Motion [DE 28] omitted Denham-Blythe's argument that the claim is barred by the dispute resolution clauses in the contract.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint may be attacked for failure "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U. S. 544, 570 (2007)). "A motion to dismiss is properly granted if it is beyond doubt that no set of facts would entitle the petitioner to relief on his claims." *Computer Leasco, Inc. v. NTP, Inc.*, 194 F. App'x 328, 333 (6th Cir. 2006). When considering a Rule 12(b)(6) motion to dismiss, the court will presume that all the factual allegations in the complaint are true and draw all reasonable inferences in favor of the nonmoving party. *Total Benefits Planning Agency v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). "The court need not, however, accept unwarranted factual inferences." *Total Benefits Planning Agency*, 552 F.3d at 434 (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

"The standard of review for a judgment on the pleadings [pursuant to Federal Rule of Civil Procedure 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure

4

12(b)(6)." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC,* 477 F.3d 383, 389 (6th Cir. 2007).

## DISCUSSION

### A. DEFENDANT DENHAM-BLYTHE'S MOTION TO DISMISS PURSUANT TO RULE 12(B)(6)

In support of dismissal, Defendant Denham-Blythe argues the following: (1) "Kentucky law recognizes the sacred right to contract;" (2) "[t]he claim is barred by the waiver of subrogation clause contained in the design build contract between Denham-Blythe and Asahi Bluegrass Forge Corporation;" (3) "[t]he insurance policy issued by Plaintiff to Asahi Bluegrass Forge Corporation granted Asahi the right to waive subrogation;" and (4) "[t]he claim is barred by the dispute resolution clauses in the contract." [DE 20-1, at 1].

#### 1. KENTUCKY LAW AND THE RIGHT TO CONTRACT

Denham-Blythe correctly asserts, "Kentucky Courts have long honored the freedom to contract[,]" and "The Kentucky Supreme Court has affirmed this principle many times." [DE 20-1, at 4].[1] "Generally, the doctrine of freedom to contract prevails and, in

---

[1] To support these assertions, Denham-Blythe cites to both *Frear v. P.T.A. Industries, Inc.,* 103 S.W.3d 99, 106 (Ky. 2003) and *Mullins v. N. Kentucky Inspections, Inc.,* No. 2009-CA-000067-MR, 2010 WL 3447630, at *1-2 (Ky. Ct. App. Sept. 3, 2010) (citing *Jones v. Hanna,* 814 S.W.2d 287, 289 (Ky. Ct. App. 1991)). However, Denham-Blythe misattributes a quote from *Mullins* as a quote from *Frear,* likely due to the *Mullins* Court citing *Frear.* [DE 20-1, at 4 (incorrect citations omitted)]. Additionally, the citation number Denham-Blythe provides for *Mullins* is, in fact, the citation number for *Frear.* In the future, to better serve both their client and judicial economy, Denham-Blythe's counsel should proofread their pleadings before filing them with the Court.

5

the absence of ambiguity, a written instrument will be enforced strictly according to its terms." *Mullins v. N. Kentucky Inspections, Inc.,* No. 2009-CA-000067-MR, 2010 WL 3447630, at *1 (Ky. Ct. App. Sept. 3, 2010) (citing *Frear v. P.T.A. Industries, Inc.*, 103 S.W.3d 99, 106 (Ky. 2003)); *see also Commonwealth v. L. G. Wasson Coal Mining Corp., Ky.*, 358 S.W.2d 347 (1962) ("In considering the legality of Contract B, we recognize the sacred right to contract without undue interference."). In *Mullins,* the Supreme Court of Kentucky recited *Jones v. Hanna*, 814 S.W.2d 287, 289 (Ky. Ct. App. 1991) as follows:

> "[C]ontracts voluntarily made between competent persons are not to be set aside lightly. As the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of public policy or illegality. If the legality of the contract can be sustained in whole or in part under any reasonable interpretation of its provisions, courts should not hesitate to decree enforcement."

*Mitsui,* 2010 WL 3447630, at *1 (quoting *Jones,* 814 S.W.2d at 289).

"The terms of an unambiguous contract cannot be varied by extrinsic evidence." *Luttrell v. Cooper Industries, Inc.,* 60 F. Supp. 2d 629, 631 (E.D. Ky. Oct. 27, 1998) (citing *O.P. Link Handle Co. v. Wright,* 429 S.W.2d 842 (Ky. 1968)). "Thus, a court may not consider parol evidence when interpreting a contract unless the contract is ambiguous." *Luttrell,* 60 F. Supp. 2d at 631 (citing *Schachner v. Blue Cross and Blue Shield of Ohio,* 77 F.3d 889, 893

(6th Cir. 1996)). "Contract language is not ambiguous unless it is subject to two reasonable interpretations." *Id; see also Hazard Coal Corp. v. Knight,* 325 S.W.3d 290, 298 (Ky. 2010) (quoting *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.,* 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) ("'A contract is ambiguous if a reasonable person would find it susceptible to different or inconsistent interpretations.'")). "The determination that a contract suffers from ambiguity must be based upon the common, plain meaning of the language of the contract." *Luttrell,* 60 F. Supp. 2d at 631 (citing *Kentucky-West Virginia Gas Co. v. Browning* 521 S.W.2d 516 (Ky. 1975)). In *Luttrell,* the Court, finding it "is not required to read a contract in a vacuum," stated the following:

> "A contract is to be construed as a whole so as to ascertain and give effect to the true intent of the parties, and the circumstances under which the contract was executed and the conduct of the parties thereafter can be considered by the Court in determining what their intention was, without it becoming a violation of the parol evidence rule."

*Luttrell,* 60 F. Supp. 2d at 631 (quoting *Rudd-Melikian, Inc. v. Merritt*, 282 F.2d 924, 928 (6th Cir.1960)). "'If the language is unambiguous, the meaning of the language is a question of law, and the intent of the parties must be discerned from the words used in the instrument.'" *Luttrell,* 60 F. Supp. 2d at 631 (quoting *Taggart v. U.S.* 880 F.2d 867, 870 (6th Cir. 1989)). "The court will not create an ambiguity where none exists." *Friction Materials Co., Inc. v. Stinson,* 833 S.W.2d 388 (Ky. Ct. App. 1992)).

7

Additionally, Denham-Blythe argues that under Kentucky law, contracts with exculpatory clauses are generally treated the same as any other contract. [DE 20-1, at 5 (citing *Cumberland Valley Contractors, Inc. v. Bell County Coal Corp.*, 238 S.W.3d 644 (Ky. 2007))]. In *Cumberland Valley Contractors, Inc.*, the Supreme Court of Kentucky found, "Recognizing the importance of freedom to contract, the courts of this Commonwealth have traditionally enforced exculpatory provisions unless such enforcement violates public policy." *Cumberland Valley Contractors, Inc.*, 238 S.W.3d at 650 (citing *Cobb v. Gulf Refining Co.*, 145 S.W.2d 96, 99 (1940)). Citing *Cumberland Valley Contractors, Inc.*, Denham-Blythe argues, "[I]t is clear that Kentucky courts will enforce the contractual terms absent some strong public policy to the contrary. There is no statutory or case law setting forth a public policy prohibiting or limiting wavier of subrogation clauses." [DE 20-1, at 5 (citing *Cumberland Valley Contractors, Inc.*, 238 S.W.3d at 650)].

Mitsui neither disputes that Kentucky law honors the basic right to contract nor contends that a public policy prohibiting or limiting waiver of subrogation clauses exists. [DE 25]. Instead, Mitsui argues the Contract [DE 20-2] is ambiguous, so the Court should deny Denham-Blythe's Motion to Dismiss [DE 20] and allow the Parties to engage in discovery to determine the intent of the contracting parties. [DE 25, at 13-17].

# 2. WHETHER PLAINTIFF'S CLAIM IS BARRED BY THE DISPUTE RESOLUTION CLAUSES IN THE CONTRACT

Denham-Blythe argues section A.4.3.1 of the Contract requires the Parties "submit this matter to nonbinding mediation," and in the event mediation is unsuccessful, section A.4.4.1 requires "the parties must submit this matter to arbitration." [DE 20-1, at 13]. Specifically, sections A.4.3.1 and A.4.4.1 of the Contract state the following:

> § A.4.3.1
> Any claim arising out of or related to the Design-Build Contract, except those waived as provided for in Section A.4.1.10, A.9.10.4 and A.9.10.5, shall, after initial decision of the Claim or 30 days after submission of the Claim for initial decision, be subject to mediation as a condition precedent to arbitration or the institution of legal or equitable or other binding dispute resolution proceedings by either party.
>
> § A.4.4.1
> Claims, except those waived as provided for in Sections A.4.1.10, A.9.10.4 and A.9.10.5, for which initial decisions have not become final and binding, and which have not been resolved by mediation, but which are subject to arbitration pursuant to Sections 6.2 and 6.3 of the Agreement or elsewhere in the Design-Build Documents, shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect at the time of the arbitration. The demand for arbitration shall be filed in writing with the other party to the Design-Build Contract and with the American Arbitration Association.

[DE 20-2, at 32-33].

In addition to Denham-Blythe citing the aforementioned dispute resolution provisions, Denham-Blythe asserts, "Kentucky

jurisprudence favors the enforcement of private arbitration contracts[,]" and "there is a strong federal policy favoring arbitration, 'even where the results would be the possibly inefficient maintenance of separate proceedings in different forums.'" [DE 20-1, at 12 (citing *Kodak Mining Co. v. Carrs Fork Corp.*, 669 S.W.2d 917, 919 (Ky. 1984); *Fite and Warmath Construction Co., Inc. v. MYS Corp.*, 559 S.W.2d 729, 734 (Ky. 1977); *Prudential Resources Corp. v. Plunkett,* 583 S.W.2d 97, 99 (Ky. 1979); *Answers in Genesis of Ky., Inc. v. Creation Minstries Int'l. Ltd.*, 556 F.3d 467, 468 (6th Cir. 2009); *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983); *Telecom Decision Makers, Inc. v. Birch Comm's, Inc.*, 2015 WL 5722817, at *3 (W.D. Ky. Sept. 29, 2015), *aff'd*, 654 F. App'x 218 (6th Cir. 2016))]. Denham-Bltyhe further asserts, "Kentucky Courts have consistently noted that arbitration clauses contained in contracts between architects and owners are enforceable." [DE 20-1, at 12 (citing *Conrad v. Humphrey,* 84 S.W. 313 (Ky. 1905); *Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501 (Ky. 1988); *Stewart Services, Inc. v. Tilford Mechannical Contractors, Inc.*, 2004 WL 1046370 (Ky. Ct. App. May 7, 2004); *Presnell Const. Managers, Inc. v. EH Const., LLC,* 134 S.W.3d 575 (Ky. 2004))]. Mitsui does not dispute Denham-Blythe's assertions that Kentucky jurisprudence and federal policy favor arbitration and arbitration clauses are enforceable. [DE 25]. Instead, while

acknowledging Denham-Blythe referred to sections A.4.3.1 and A.4.4.1, Mitsui contends, "[Denham-Blythe] omits discussion of § A.4.2.2 which in fact precludes the parties from engaging in alternative dispute resolution." [DE 25, at 17].

Section A.4.2.2 of the Contract states the following:

> If the parties have not identified a Neutral in Section 6.1 of the Agreement or elsewhere in the Design-Build Documents then, except for those claims arising under Sections A.10.3 and A.10.5, the Owner shall provide an initial decision. An initial decision by the Owner shall be required as a condition precedent to mediation of all Claims between the Owner and Design-Builder arising prior to the date final payment is due, unless 30 days have passed after the Claim has been referred to the Owner with no decision having been rendered by the Owner.

[DE 20-2, at 32]. Pursuant to Section A.4.2.3:

> The initial decision pursuant to Sections A.4.2.1 and A.4.2.2 shall be in writing, shall state the reasons therefore and shall notify the parties of any change in the Contract Sum or Contract Time or both. The initial decision shall be final and binding on the parties but subject first to mediation under Section A.4.3 and thereafter to such other dispute resolution methods as provided in Section 6.2 of the Agreement or elsewhere in the Design-Build Documents.

*Id.* Mitsui correctly asserts Sections A.10.3 and A.10.5 "concern claims regarding hazardous materials which are irrelevant here." [DE 25, at 18 (citing [DE 20-2, at 42])]. Regarding Section 6.1 of the Agreement, the contracting parties were directed to appoint an "individual to serve as a Neutral pursuant to Section A.4.2 of Exhibit A, Terms and Conditions," but the contracting parties chose not to do so. [DE 20-2, at 6]. Since the contracting parties failed

to identify a Neutral, Section A.4.2.2 required Asahi, the Owner, to provide an initial decision. [DE 20-2, at 32].

According to the plain meaning of Section A.4.2.2, Asahi was required to make an initial decision as a condition precedent to the mediation of claims *arising prior to the date final payment was due or within thirty (30) days of the claim being referred to Asahi for an initial decision*. *Id.* (emphasis added). The claim in question did not arise prior to the date final payment was due. However, more than thirty days have passed since the claim was submitted to Asahi for an initial decision. Mitsui's argument that "the parties cannot proceed to other alternative dispute resolutions of the Construction Contract since Asahi's [initial] decision in this case was to have its carrier file this suit in lieu of mediation" is unavailing. [DE 25, at 18]. A legal action, such as the present case, is not an initial decision as intended under Section A.4.2. Instead, pursuant to Sections A.4.2.2, A.4.2.3, A.4.3.1, and A.4.4.1, the initial decision was meant to be a written decision by Asahi that would have been final and binding but first must have been subject to mediation, and ultimately, if mediation did not resolve the matter, the claim would be subject to arbitration. [DE 20-2, at 32-33].

Mitsui correctly asserts, "Courts must 'place arbitration agreements on equal footing with other contracts . . . enforce[ing] them according to their terms.'" [DE 25, at 17-18 (citing *Scott v.*

12

*Louisville Bedding Co.,* 404 S.W.3d 870, 875 (Ky. Ct. App. 2013)(citing *AT&T Mobility LLC v. Conception,* 131 S.Ct. 1740, 1745(2011)))]. Pursuant to the terms of the present dispute resolution provisions, absent an initial decision from Asahi, and thirty (30) days having passed after submission of the claim to Asahi for initial decision, the claim was subject to mediation then arbitration. [DE 20-2, at 32-33]. In lieu of the contracting parties mediating as directed by the Contract, Mitsui, as subrogee of Asahi, brought this action. As Denham-Blythe correctly asserts, to allow Asahi to ignore the express dispute resolution provisions found in the Contract that require mediation and arbitration and file a lawsuit instead would run afoul of both Kentucky and federal precedent and policy and render dispute resolution provisions "null and void." [DE 26, at 8-9]. If a contracting party could avoid mediation and arbitration by opting to file a lawsuit, dispute resolution provisions requiring mediation and arbitration would serve no purpose because parties who do not favor mediation or arbitration would simply file a lawsuit to avoid alternative dispute resolution. Accordingly, the Court will grant Denham-Blythe's Motion to Dismiss [DE 20], dismiss this action without prejudice, and direct Mitsui to comply with the dispute resolution provisions set forth in the Contract.

## B. DEFENDANT BLUESCOPE'S MOTION FOR JUDGMENT ON THE PLEADINGS

Like Defendant Denham-Blythe, Defendant BlueScope argues the following: (1) "Kentucky law recognizes the sacred right to contract;" (2) "[t]he claim is barred by the waiver of subrogation clause contained in the design build contract between Denham-Blythe and Asahi Bluegrass Forge Corporation, under which BlueScope is a defined Contractor;" and (3) "[t]he insurance policy issued by Plaintiff to Asahi Bluegrass Forge Corporation granted Asahi the right to waive subrogation." [DE 29]. Unlike Denham-Blythe, BlueScope does not argue the claim is barred by the dispute resolution clauses in the contract. Since BlueScope fails to make the dispute resolution clause argument that required Denham-Blythe's Motion to Dismiss [DE 20] be granted, the Court will deny BlueScope's Motion for Judgment on the Pleadings [DE 28]. Nevertheless, Mitsui's claims against BlueScope, Varco, and all other Defendants shall be dismissed without prejudice because the Contract required the Parties to mediate this claim, and if mediation did not resolve the issue, to participate in arbitration.

## CONCLUSION

Therefore, having considered the matter fully, and being otherwise sufficiently advised,

**IT IS ORDERED** as follows:

14

(1) Defendant Denham-Blythe Company, Inc's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [DE 20] is **GRANTED;**

(2) Defendant BlueScope Buildings North America, Inc.'s Motion for Judgment on the Pleadings [DE 28] is **DENIED;**

(3) This matter is **DISMISSED WITHOUT PREJUDICE;**

(4) This is a final and appealable order; and

(5) Plaintiff Mitsui Sumitomo Insurance USA, Inc. shall **COMPLY** with the dispute resolution provisions set forth in the Contract.

This the 11th day of April, 2019.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge